IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LANEA KOLLENBURN;<br>CALEB KOLLENBRUN,<br><br>      Plaintiffs,<br><br>  v.<br><br>COUNTY OF CLACKAMAS;<br>CLACKAMAS BOARD OF<br>COUNTY COMMISSIONERS,<br><br>      Defendants. | Civ. No. 3:21-cv-00049-HZ<br><br>**OPINION & ORDER** |

HERNANDEZ, Chief Judge

  This civil rights and disability accommodation case comes before the Court on a Motion for Preliminary Injunction filed by Plaintiffs Lanea Kollenburn and Caleb Kollenburn ("the Kollenburns,"). ECF No. 11. On January 13, 2021, this Court issued a Temporary Restraining Order ("TRO") enjoining Defendants County of Clackamas and Clackamas Board of County Commissioners (collectively, "the County,") from euthanizing the Kollenburns' dog Lladk pending further orders from this Court. ECF No. 7.

  On January 22, 2021, the Kollenburns filed their First Amended Complaint ("FAC"). ECF No. 15. On January 27, 2021, the County appeared in the case and filed its Response to the Kollenburns' Motion for Preliminary Injunction. ECF No. 16. The Court heard oral argument on February 5, 2021. ECF No. 26. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Kollenburns' Motion for Preliminary Injunction is DENIED.

**BACKGROUND**

Plaintiffs Lanea and Caleb Kollenburn are a married couple who live in Milwaukie, Oregon with their two small children. FAC ¶ 9. The Kollenburns allege that they have qualifying disabilities for purposes of the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), and Oregon's anti-discrimination statutes. *Id.* at ¶ 11.

The Kollenburns are the owners of Lladk, a four-year-old Alaskan Malamute. FAC ¶ 10. The Kollenburns allege that Lladk is trained to assist them when their emotional disabilities become incapacitating. *Id.* at ¶¶ 12-14. As such, the Kollenburns allege that Lladk is a service animal under the ADA, an assistance animal under Oregon law, and an emotional support animal under the FHA. *Id.* at ¶¶ 16-18.

The Kollenburns have owned Lladk for 3.5 years. Def. Ex. 101 at 2. Although Lladk has never shown any aggression toward Mr. and Mrs. Kollenburn, he "has had a hard time adjusting to [the Kollenburns'] newborn baby, toddler, and busy family life." *Id.* In particular, Lladk does not like to be approached by I.K., the Kollenburns' sixteen-month-old son, and "generally tries to avoid him." *Id.* Lladk has also killed chickens in the past. Def. Ex. 102, at 6.

Lladk does not like to be touched on his ears or hips and will growl if touched in those areas. Def. Ex. 101, at 2; Def. Ex. 102, at 6. Lladk suffers from separation anxiety and "kennel stress," which are treated with anti-anxiety medication. Def. Ex. 101, at 2.

On July 11, 2020, I.K. was "being rambunctious," and so Mrs. Kollenburn put Lladk into the yard to separate him from I.K. Def. Ex. 101, at 2. I.K. climbed through the dog door and followed Lladk into the yard. FAC ¶ 20; Def. Ex. 101, at 2. While the two were in the yard together, Lladk bit I.K. on the head, causing a 7.7 cm laceration to the right rear of I.K.'s head and a 2.7 cm laceration on the lower right front of I.K.'s head. Def. Ex. 101, at 2. I.K. was alone

with Lladk when the bite occurred, although the Kollenburns speculate that I.K. may have jumped on or bitten Lladk, provoking a reciprocal bite from the dog. FAC ¶ 20. "Lladk ceased contact with I.K. immediately on command." *Id.* at ¶ 22. The Kollenburns took I.K. to the hospital, where he required eight surgical staples to repair the lacerations. *Id.* at ¶ 24; Def. Ex. 101, at 2.

Mr. Kollenburn promptly reported the bite incident to Clackamas County Dog Services ("CCDS"). FAC ¶ 25. On July 13, 2020, CCDS issued a "Bite Quarantine Notice" for Lladk. *Id.* at ¶ 26. Mr. Kollenburn turned Lladk over to CCDS to be quarantined at a County facility. Def. Ex. 102, at 7. On July 14, 2020, Mr. Kollenburn also signed a surrender form for Lladk, which would become effective at the end of the quarantine period. FAC ¶ 27. Mrs. Kollenburn did not sign the surrender form. *Id.* On July 16, 2020, Mr. Kollenburn contacted the County and told them that he had reconsidered his decision to surrender the dog and asked to reclaim Lladk at the end of the quarantine. Def. Ex. 101, at 2.

On July 20, 2020, CCDS issued a "Notice of Intent to Classify Dog as Dangerous Dog." Def. Ex. 101, at 2. On July 22, 2020, Mr. Kollenburn appealed the Notice and requested a hearing. *Id.*

On July 28, 2020, a hearing was held before Clackamas County Hearings Officer Joe Turner, at which Mr. Kollenburn appeared by telephone. Def. Ex. 101, at 1. On July 30, 2020, the Hearings Officer issued a written decision applying the statutory factors provided in ORS 609.093 and finding that Lladk qualified as a "dangerous dog" under the Clackamas County Code based on "the unprovoked nature and severity of the attack" on I.K. *Id.* at 3, 4-8. The Hearings Officer concluded that Lladk "poses too great a hazard to public health and safety, specifically the health and safety of Respondent's young children, to allow Respondent to

reclaim the dog. The only sure way to protect the public is to require that Lladk be immediately deemed property of the County for purposes of euthanasia." *Id.* at 6.

Mr. Kollenburn retained counsel and appealed the Hearings Officer's decision to the Clackamas County Circuit Court via a petition for writ of review under ORS 34.040. Def. Ex. 103. In his petition, Mr. Kollenburn asserted that the Hearings Officer's orders should be vacated because (1) they were based on an improper construction and application of law, and "specifically, are based upon speculations unsupported by substantial evidence," and (2) that the Hearings Officer abused his authority by suspending the Kollenburns' ownership of Lladk and ordering him euthanized "despite the availability of less Draconian alternatives sufficient to protect the public's safety." *Id.* at 3-4.

A hearing was held on the petition for writ of review before Judge Douglas Van Dyk of the Clackamas County Circuit Court on October 30, 2020. Def. Mot. Ex. 104. On review, Judge Van Dyk found "that there is evidence and substantial evidence in the record to support the hearing officer's decision," and the "decision is a reasonable decision to make against the backdrop of the record." *Id.* at 11. Judge Van Dyk found no "improper construction of the law or any improper application of applicable law" under ORS 34.040 and affirmed the decision of the Hearings Officer. *Id.* at 13. On November 10, 2020, Judge Van Dyk signed a general judgment affirming the decision of the Hearings Officer and dismissing Mr. Kollenburn's petition for writ of review. Def. Ex. 105, at 1-3.

Mr. Kollenburn then moved to set aside Judge Van Dyk's judgment. Def. Ex. 104, at 18. At a hearing held on December 21, 2020, Judge Van Dyk denied the motion and reiterated his finding that the Hearings Officer's determination was supported by substantial evidence and that, even if new evidence were considered, it would not change his ruling. *Id.* at 23-24. On January

11, 2021, Judge Van Dyk signed an order denying Mr. Kollenburn's request to reconsider, to set aside the judgment, and to stay execution of judgment. Def. Ex. 106.

The Kollenburns filed this federal case the following day, January 12, 2021. ECF No. 1. On January 13, 2021, this Court granted the Kollenburns' Motion for a Temporary Restraining Order and enjoined the County from euthanizing Lladk pending resolution of the Kollenburns' Motion for Preliminary Injunction. ECF Nos. 5, 7.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

**DISCUSSION**

The Kollenburns bring four claims in their First Amended Complaint. Their first and principal claim alleges that the procedures and provisions by which Lladk was deemed to be dangerous and ordered destroyed were constitutionally defective under both the federal and state constitutions and violated the Kollenburns' statutory rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Fair Housing Act ("FHA") 42 U.S.C. § 3601 *et seq.* and the Oregon anti-discrimination statutes, ORS Chapter 659A. FAC ¶ 66. The Kollenburns' first claim asks the Court to "nullify and deem void *ab initio*" the orders finding Lladk to be dangerous and mandating Lladk's euthanasia. *Id.* The Kollenburns also ask that the Court declare portions of the Clackamas County Code and related Oregon statutes to be unconstitutional. *Id.*

The Kollenburns' remaining three claims allege that Lladk is a service animal, an assistance animal, and/or an emotional support animal and that, by ordering Lladk's destruction, the County has violated the ADA (Claim 2), the FHA (Claim 3), and ORS Chapter 659A (Claim 4). FAC ¶¶ 67-69.

As a preliminary matter, the Kollenburns have demonstrated that Lladk will be euthanized in the absence of continuing injunctive relief. Lanea Kollenburn Decl. ¶ 44. ECF No. 4. The Kollenburns have also demonstrated through their Declarations that their relationship with Lladk is unique and deeply personal. Accordingly, the Court concludes that the Kollenburns have made a sufficient showing of imminent and irreparable harm with respect to Lladk's pending euthanasia. The Court's analysis will therefore focus on the remaining three elements of the *Winter* test.

### I.   Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale"

formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

In this case, the County has raised issues of preclusion and jurisdiction which might prevent this Court from ever reaching the merits of at least some of the Kollenburns' claims. If a court cannot consider the merits of a claim, the plaintiff cannot meet his burden of demonstrating likelihood of success on the merits. *See, e.g., Parmentor v. Nationstar Mortgage, LLC.*, Civ. No. 6:17-cv-01742-MC, Civ No. 6:17-cv-01743-MC, Civ. No. 6:17-cv-01997-MC, 2018 WL 11223628, at *1 (D. Or. June 22, 2018) ("Because this court lacks subject matter jurisdiction over this action, appellant cannot demonstrate any likelihood of success on the merits."). The Court will therefore address the issues of preclusion and subject matter jurisdiction first.

### A. Preclusion

The County contends that principles of preclusion bar the Court from granting the relief requested in the Kollenburns' first claim. The preclusive effect of a final judgment entered in a previous lawsuit is governed by the doctrines of claim and issue preclusion, "collectively referred to as '*res judicata*.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim and issue preclusion prevent "parties from contesting matters that they have had a full and fair opportunity to litigate," and serve to "protect against the expense and vexation attending multiple lawsuits, conserve[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *White v.*

*City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (internal quotation marks and citation omitted). "The same rule applies to administrative proceedings that have been upheld by state courts," and "[i]n determining the preclusive effect of a state administrative decision or a state court judgment, [federal courts] follow the state's rules of preclusion." *Id.*

For claim preclusion, Oregon law provides that a plaintiff who has prosecuted one action through to a final judgment is barred from prosecuting another action against the same defendant where the claim in the second action "is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Drews v. EBI Cos.*, 310 Or. 134, 140 (1990) (internal quotation marks and citation omitted). Claim preclusion "does not require actual litigation of an issue of fact or law," nor does it "require that the determination of the issue be essential to the final or end result reached in the action, claim, or proceeding." *Id.* Only "the opportunity to litigate is required, whether or not it is used." *Id.* "Where there is an opportunity to litigate the question along the road to the final determination of the action or proceeding, neither party may later litigate the subject or question." *Id.* Claim preclusion also applies to "a person who was not a party to an earlier action but who was in 'privity' with a party to that earlier action," provided that such an outcome would be "fundamentally fair." *Bloomfield v. Weakland*, 339 Or. 504, 511 (2005).

In this case, Mr. Kollenburn appealed the County Hearings Officer's ruling to the Clackamas Circuit Court under a petition for writ of review. Such writs allow an injured party to seek review of an inferior court or officer's exercise of "judicial or quasi-judicial functions" to allege that the court or officer: (a) exceeded its jurisdiction; (b) failed to follow the procedure applicable to the matter before it; (c) made a finding or order not supported by substantial

evidence in the record; (d) improperly construed the applicable law; or (e) rendered a decision that is unconstitutional. ORS 34.040(1).

The Kollenburns' first claim seeks to set aside the dangerous dog designation and euthanasia order on the grounds that they violate the Oregon and federal constitutions. Mr. Kollenburn did not raise any constitutional challenge before the Hearings Officer or in his subsequent petition for writ of review. Although it is not clear whether the constitutional issues could have been litigated in the first instance before the Hearings Officer, they certainly could have been raised before the circuit court pursuant to ORS 34.040(1)(e). As noted, the opportunity to litigate an issue, whether or not it is exercised, is all that is required for claim preclusion.

The Kollenburns dispute whether they had a "full and fair" opportunity to litigate their claims, pointing out that Mr. Kollenburn suffers from emotional disabilities and appeared *pro se* at the hearing before the Hearings Officer and that Mrs. Kollenburn did not appear at all. The Court notes, however, that Mrs. Kollenburn was on the phone during the County hearing and was given the opportunity to offer testimony. Def. Ex. 102, at 35-36. As to the issue of privity, the Kollenburns have entirely overlapping interests—they are husband and wife, co-owners of the dog, and are united in seeking to recover possession of Lladk. Furthermore, the Court notes that Mr. Kollenburn was represented by counsel in his petition for writ of review before the circuit court. Def. Ex. 104.

The Court concludes that the Kollenburns had a full and fair opportunity to bring their constitutional challenges in the prior state court action. The preclusive effect of the state court judgment substantially undermines the Kollenburns' prospects for prevailing on their first claim for relief for purposes of the *Winter* analysis.

### B. The *Rooker-Feldman* Doctrine

The County also contends that the Kollenburns' claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine generally prohibits a federal district court from exercising subject matter jurisdiction over a claim that is a *de facto* appeal from a state court judgment. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). A federal action constitutes a *de facto* appeal where claims raised in federal court are "inextricably intertwined" with a state court judgment, meaning "the federal claim can succeed only to the extent that the state court wrongly decided the issues before it, or if the relief requested would effectively reverse or void the state court decision." *Walkup v. Div. of Child Support, Multnomah Cnty.*, Case No. 3:20-cv-01554-SB, 2020 WL 8085138, at *1 (D. Or. Nov. 16, 2020) (quoting *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008)). *Rooker-Feldman* applies where: (1) the plaintiff in a federal suit lost in the state court proceeding; (2) the state court determination is at the core of the federal lawsuit; (3) the federal lawsuit seeks review and rejection of the state court verdict; and (4) the state court judgment was entered before the commencement of the federal action. *Id.* at *2.

In the present case, the Kollenburns seek to "nullify and deem void *ab initio*," the orders finding Lladk dangerous and mandating that he be euthanized. FAC ¶ 66. Although these orders were issued by the County based on the findings of the Hearings Officer, they were affirmed on a petition for writ of review by a judge of the Clackamas County Circuit Court in a general judgment issued on November 10, 2020 and confirmed in a subsequent order denying Mr. Kollenburn's motion to set aside the judgment.

The Kollenburns' first claim is deeply entangled with the issues considered and decided by the circuit court, particularly to the extent that the Kollenburns appear to challenge the factual determinations underlying Lladk's designation as a "dangerous" dog and, that determination

having been made, what was to be done with him. Even if the claims could be separated, granting the requested relief would have the unquestionable effect of reversing and voiding a state court judgment. Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to grant such relief. This issue weighs heavily against granting the requested preliminary injunction.

### C. Disability accommodation claims

The Kollenburns' second, third, and fourth claims concern their allegation that Lladk was a service dog and/or an emotional support animal for the Kollenburns and that, in depriving them of Lladk's assistance, the County violated the ADA, the FHA, and Oregon's anti-discrimination laws. FAC ¶¶ 67-69. Because of the preclusive effect of the prior state court judgment, the Court will accept the County's determination that Lladk is dangerous in considering the Kollenburns' disability accommodation claims.

#### 1. ADA

To prevail on a claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017). A public entity may be liable for damages under Title II "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Id.* at 951 (internal quotation marks and citation omitted). There is an affirmative defense in ADA accommodation cases where the requested accommodation involves a direct threat to the health and safety of others. *Roe v. Providence Health Sys.-Oregon*, 655 F. Supp.2d 1164, 1168 (D. Or. 2009). "The term 'direct threat' means a significant risk to the health or

safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id.* (quoting § 12182(b)(3)). In *Roe*, the court found in favor of a hospital in an ADA public accommodation claim brought by a patient whose service dog's offensive odor, growling, and potential for spreading infection posed a direct threat to the health and safety of others. *Id.*

Although the Court does not rule on the merits of the Kollenburns' ADA claim at this stage of the case, the Court does note that the ADA only requires reasonable accommodations. The fact that the County's "dangerous dog" determination was based on Lladk seriously biting one of the Kollenburns' children weighs against the likelihood of success on the Kollenburns' ADA claim.

## 2. FHS

The FHA provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" because of that person's handicaps or disabilities. 42 U.S.C. § 3604(f)(2).[1] This can include "a refusal to make reasonable accommodations in rules, policies, practices, or services, where such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). However, "[n]othing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health and safety of other individuals[.]" 42 U.S.C. § 3604(f)(9).

Like the ADA, the FHA requires only reasonable accommodations and it is doubtful whether this requirement extends to allowing aggressive or dangerous dogs. *See Borenstein v. Garden*, Case No. 2:19-cv-00482-RFB-NJK, 2019 WL 2062948, at *2 (D. Nev. May 9, 2019) ("In most circumstances, permitting use of a service dog is a reasonable accommodation. However,

---

[1] The County disputes whether the FHA applies in this case because the County is not the Kollenburns' landlord or housing provider. The Court will assume, for purposes of this motion, that the FHA applies.

the Court finds that it is not reasonable to require Defendant to accommodate a service dog that displays aggressive and dangerous behavior towards Defendant's other tenants."); *Roberts v. Veterans Vill. Enters., Inc.*, CASE NO. 17cv524-LAB (MDD), 2017 WL 1063477, at *5 (S.D. Cal Mar. 20, 2017) ("A reasonable accommodation may include a therapy dog or service dog. But it does not necessarily include an unrestricted right to keep the dog of one's choosing, and it does not include a right to *unreasonable* accommodations, such as refusing to keep a service dog under control, or keeping an aggressive animal."). This weighs against the Kollenburns' FHA claim for purposes of the *Winter* analysis.

### 3. State Disability Discrimination Claims

ORS Chapter 659A contemplates assistance animals and provides that a "place of public accommodation or of access to state government services, programs or activities may impose legitimate requirements necessary for the safe operation of the place of public accommodation or the services, programs or activities," provided that the safety requirements "are based on actual risks, not on speculation, stereotypes or generalizations about persons with disabilities." ORS 659A.143(6)(b). Like the FHA and ADA, Oregon law also requires "reasonable modifications as necessary" to allow a person who benefits from an assistance animal to obtain goods, services, or access to facilities and programs. ORS 659A.143(7).

As with the ADA and FHA claims, it seems doubtful whether this obligation extends to allowing the presence of dangerous or aggressive dogs. Of note, Lladk's designation as a "dangerous dog" and the order for his destruction were not based on generalizations or stereotypes, but on an individualized assessment of his past and present behavior. This weighs against the Kollenburns' prospects for prevailing on this claim.

For the reasons set forth in the preceding sections, the Court concludes that the Kollenburns have not carried their burden of persuasion concerning either a likelihood of success or serious questions going to the merits of their claims.

## II.     Balance of Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).  The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).   When the government is a party, these last two factors of the preliminary injunction analysis will merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).[2]

The Court has carefully considered the record and given particular attention to the declarations setting forth the opinions of the experts advanced by both sides, as well as the declarations submitted by the Kollenburns themselves.  ECF Nos. 4, 12, 18, 19, 23, 24, and 25.  The Kollenburns are faced with the loss of a companion for whom they have clearly have a deep and genuine affection.  The County, on the other hand, must consider its responsibility to ensure the safety of the community with respect to a dog who has seriously bitten a small child.  Although the Kollenburns argue that Lladk can be safely returned to their care or, alternatively, into the care of a rescue society, the Court concludes that the County's obligation to public safety outweighs the Kollenburns' intertest in regaining possession of Lladk.

---

[2] Although the merging of the balance of the equities and the public interest analysis most often occurs in the context of federal or state government action, courts have applied the same principle to cases involving local or municipal governments.  *See, e.g., Anti Police-Terror Project v. City of Oakland*, 477 F. Supp.3d 1066, 1085-86 (N.D. Cal. 2020); *Poder in Action v. City of Phoenix*, No. CV-20-01429-PHX-DWL, 2020 WL 5038582, at *4 (D. Ariz. Aug. 26, 2020).

In sum, the Court concludes that, despite the Kollenburns' showing of irreparable harm, the remaining *Winter* factors do not favor the requested preliminary injunction and the Kollenburns' motion is DENIED. However, the Court will briefly continue the injunction to allow the Kollenburns to apply for relief from the Ninth Circuit, should they elect to pursue an appeal. *See Bowlin v. Deschutes Cnty.*, 712 F. Supp. 803, 809 (D. Or. 1988) (denying a preliminary injunction but briefly staying euthanasia on the court's own motion pending an anticipated appeal). The previously issued TRO will continue on the same terms previously imposed and the County is enjoined from euthanizing Lladk for a period of seven days from the date of this Order. At the end of that period, the TRO will be dissolved and the injunction lifted without further action by this Court, absent contrary orders from the Ninth Circuit.

## CONCLUSION

Plaintiffs' Motion for Preliminary Injunction, ECF No. 11, is DENIED. The previously issued Temporary Restraining Order, ECF No. 7, will continue for seven (7) days from the date of this Order to allow Plaintiffs to seek further relief on appeal. At the end of that period, and in the absence of any further orders by this Court or the United States Court of Appeals for the Ninth Circuit, the TRO will be DISSOLVED.

It is so ORDERED and DATED this ___24___ day of February 2021.

*Marco Hernandez*
Marco A. Hernandez
Chief U.S. District Judge